UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EDGAR GIOVANI SERAFIO LUJANO,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et al.,

Respondents.

No.  1:26-cv-00131-TLN-AC

**ORDER**

This matter is before the Court on Petitioner Edgar Giovani Serafio Lujano's ("Petitioner") request for immediate injunctive relief, which the Court construed as a motion for temporary restraining order ("TRO").[1]  (ECF No. 1.)  Respondents opposed the motion.[2]  (ECF No. 6.)  Respondents also waived hearing and had no objection to converting the construed motion for TRO into a motion for preliminary injunction.  (ECF No. 6 at 3 n.1.)  For the reasons set forth below, the Court issues a preliminary injunction and orders Petitioner's immediate release.

---

[1]   The Court notified the parties that it construed Petitioner's pro se request for injunctive relief as a motion for TRO.  (ECF No. 5 at 1 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).)

[2]   In light of the Respondents' opposition, the Court does not need further briefing to rule on this motion.  To avoid further delay and irreparable harm, the Court rules without awaiting reply.

1

## I.    FACTUAL BACKGROUND

Petitioner is a citizen of Mexico and an asylum applicant in the United States.  (ECF No. 6 at 1.)  Petitioner has been residing in the United States while awaiting the outcome of his case under supervised release with U.S. Immigration and Customs Enforcement ("ICE").  (ECF No. 1 at 5.)  He is a father to four minor children, the youngest of whom is five-years old, and he is their only financial support.  (*Id.*)

Petitioner complied with the conditions of his supervised release and his asylum application is still pending.  (*Id.*)  Nevertheless, on November 17, 2025, Petitioner was detained during a routine ICE check-in without a warrant or a pre-detention hearing.  (*Id.*)

Petitioner challenges the lawfulness of his civil detention and seeks immediate release.  (*See* ECF Nos. 1, 2.)  Respondents do not contend Petitioner violated his conditions of release, is a danger to the community, or a flight risk.  (*See* ECF No. 6.)  Respondents assert only that Petitioner is subject to U.S. Department of Homeland Security's ("DHS") policy change requiring mandatory detention.  (*Id.* at 3.)  Petitioner has now been detained for over two months.  (*See id.*)

## II.    STANDARD OF LAW

For a preliminary injunction, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a preliminary injunction.  *Id.* at 1134–35.

### III.   ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

####    A.    Likelihood of Success on the Merits

Petitioner argues that his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1.)  Below the Court finds that Petitioner has established a likelihood of success on his procedural due process claim.[3]

#### *i.   Immigration and Nationality Act, § 1225 v. § 1226*

As an initial matter, the Court addresses Respondents' sole argument in opposition: Respondents claim that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) because he is an "applicant for admission."  (ECF No. 6 at 3.)  This Court has now ruled on this same issue dozens of times and courts nationwide have overwhelmingly rejected the Government's legal position, finding DHS's new detention policy unlawful.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS July Policy for a nationwide certified class).

As this Court has previously noted, it will not reconsider its position absent new argument, case law, or distinguishable facts.  Thus, adopting the reasoning of its numerous prior orders, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2).  Rather, Petitioner is subject to § 1226(a) and is entitled to the process that statute requires, including a bond hearing, at a minimum.

#### *ii.   Violation of Procedural Due Process*

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of

---

[3]     In his habeas petition, Petitioner claims that he has not received sufficient procedural safeguards and that his detention is unlawfully prolonged. (ECF No. 1.)  Because the Court finds relief warranted on procedural due process grounds, the Court declines to address Petitioner's claim that his detention is unconstitutionally prolonged.

the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### *a)    Liberty Interest*

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom when he was placed on supervised release. Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. It is not disputed that Petitioner did comply with the conditions of his release. (ECF No.

4

1 at 5; ECF No. 6.) Additionally, he was detained a routine ICE check-in, which is evidence of his compliance. (ECF No. 1 at 5.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

### b)    *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. Petitioner resides in the United States where he has established community ties and he is the father of — and sole-financial support to — four young children. (ECF No. 1 at 6.) Despite that, Petitioner has now been detained for over two months without a warrant or opportunity to be heard. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Petitioner complied with the conditions of his release and his asylum application remains pending. (ECF No. 1 at 5.) Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioner's asylum application is ongoing and there is no removal order. Before placing him on supervised release, DHS would have found that Petitioner was not a danger to the community nor a flight risk. That finding would only been strengthened by Petitioner's conduct of compliance since then. Thus, he is not a flight risk. Additionally, Respondents do not claim that he has a criminal history or is a danger to society. Therefore, on this record, the Court cannot find any legitimate interest for Respondents to detain Petitioner.

Moreover, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioner under § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. It would also be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the

6

State could be expected to provide." *Id.* at 129.  Here — where Petitioner has complied with the conditions of his release, has been previously determined not to be a flight risk or a danger and there is no contrary evidence, and removal is not reasonably foreseeable — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted.  Respondents have not provided either.  Nor does it seem they provided a post-deprivation hearing. Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits of his procedural due process claim, regardless of his length of detention.

### B.      Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a preliminary injunction.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner has been separated from his community and cannot work to support his four young children.  (ECF No. 1 at 6.)  Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his asylum application.  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Thus, Petitioner has sufficiently established irreparable harm.

### C.      Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities

tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Any burden imposed by constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained.  In sum, these last two factors weigh in Petitioner's favor.

IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's request for injunctive relief contained in his habeas petition (ECF No. 1), converted to a motion for preliminary injunction, is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner Edgar Giovani Serafio Lujano from custody under the same conditions he was released prior to his current detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing. **Respondents must file a notice certifying compliance with this provision of the Court's Order by January 21, 2025.**

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's

8

removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

5. This matter is referred to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: January 20, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE